## DECLARATION OF DANIEL ELLSBERG

I, DANIEL ELLSBERG, declare as follows:

1. I submit this declaration in support of the above-captioned petition to unseal the transcripts and other records of the federal grand jury convened in April and August 1971 in Boston to investigate the release of the Pentagon Papers.

2. Beginning in 1958, I worked on high-level military strategy for RAND Corporation, a nonprofit set up by the Air Force for long-range research. I left RAND for the Defense Department in 1964, working on Vietnam policy as a special assistant to the Assistant Secretary of Defense (ISA), then spent 1965-67 as a Foreign Service Officer (Reserve: FSR-1) in the U.S. Embassy in Saigon. On my return to the RAND Corporation in mid-1967, one of my assignments was to work on a study commissioned by then-Secretary of Defense Robert McNamara to study U.S. decision-making in Vietnam. The study, now known as the Pentagon Papers—47 volumes, 7000 pages, all classified top secret--revealed that the government had continuously escalated the war despite evidence that the war was probably unwinnable and had lied to the public about the war's (virtually non-existent) progress.

3. In 1969, I began photocopying the Pentagon Papers with the intent to make them available to Congress and the public. I had two goals: to enlighten the public about the Vietnam War in hopes that they would act to end it and to alert them to the danger of Executive secrecy.

4. I tried to publicize the Pentagon Papers as early as October 1969, giving copies to the Senate Foreign Relations Committee in hopes they would hold hearings on the

matter. The chairman, Senator William Fulbright, initially assured me he would do so, but eventually chose not to. My other efforts to persuade members of Congress to publish the Pentagon Papers were unsuccessful so I turned to the press. In March 1971, I met with reporter Neil Sheehan of *The New York Times* and gave him access to some four thousand pages of the Pentagon Papers, which the *Times* began to publish on June 13, 1971. When *The New York Times* was enjoined from further publication, on June 15, I gave the *Washington Post* copies of roughly the same material. Subsequently, after the *Post* was enjoined, I gave portions to seventeen other newspapers (two more of which were subject to injunctions), before the Supreme Court ruled that publication was constitutionally protected and could resume. Shortly thereafter, the Beacon Press agreed to publish the Pentagon Papers in full, though again it was subject to heavy costs of litigation by the government.

5.  During the summer of 1971, I understand that the FBI subpoenaed several people in Boston in connection with the Pentagon Papers. Several of the witnesses who were called were people to whom I had made portions of the Pentagon Papers available, including Noam Chomsky and Richard Falk. Meanwhile, I was on trial in Los Angeles for possessing and copying classified government information. I believe the Boston grand jury focused on the distribution of the papers, since the individuals who were questioned included journalists and publishers. James C. Goodale, former general counsel of *The New York Times*, told me that Neil Sheehan and Hedrick Smith of *The New York Times* were expected to be indicted.

6.  It is very important, now more than ever, to unseal the Boston grand jury records, because it is one of the earliest—perhaps the very first-- government attempt to use the Espionage Act to indict journalists for doing journalism. The Obama Administration imprisoned one reporter, Judith Miller, for 85 days for refusing to

reveal her sources. Another journalist, James Rosen of Fox News, was named in an FBI affidavit as a "co-conspirator" along with a source who was prosecuted for a leak. The Trump Administration, which has dubbed the press the "enemy of the people," may do the same. The theory that journalists can be charged under the Espionage Act for publishing information to the American public is one that has never been tested in the courts. The Boston grand jury records could shed light on the government's strategy for investigation of journalists, and its theory of the constitutionality of such an approach. For these reasons, I support the release of the transcripts and other records related to the Boston grand jury investigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 4,  2018, in Kensington, CA 94707.

*/s/ Daniel Ellsberg*
Daniel Ellsberg