UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JILL LEPORE,<br><br>      Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | Miscellaneous Action No. 18-mc-91539-ADB |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

After the National Archives denied her request for access to sealed records relating to the 1971 Boston Grand Jury Investigations of the Pentagon Papers, Jill Lepore (Petitioner) filed the Petition to ask the Court to use its "inherent authority" to unseal those records. ECF No. 3 at 2. Petitioner contends that "disclosure would fill a significant gap in the public's understanding of the Pentagon Papers episode and contribute to contemporary debates over press freedom and national security." *Id.*

The Court should deny the Petition. As the D.C. Circuit recently held in rejecting the same legal theory Petitioner advances here, nothing in the text, history, or purpose of Fed. R. Crim. P. 6(e) (Rule 6(e)) supports her argument that this Court has "inherent authority" to unseal historically significant grand jury records or disclose any other matter that does not fall within any of the enumerated exceptions in Rule 6(e). *McKeever v. Barr*, 920 F.3d 842, 845 (D.C. Cir. 2019). Nevertheless, should the Court conclude it has authority to order the disclosure of historically significant records, disclosure would be inappropriate because Petitioner's request is not structured to cover only the needed material. For these reasons, this Court should dismiss this case.

**Relevant Allegations**

Petitioner is a historian and journalist. ECF No. 4, ¶ 1. Currently, she is writing an article about the 1971 Boston grand juries and a book about Simulmatics, a data firm that undertook significant research in Vietnam. *Id.* ¶ 8. Petitioner alleges that scholar Samuel Popkin's struggles with the 1971 Boston grand jury will help her understand the relationship of the firm and its personnel to the Pentagon Papers controversy. ECF No. 4, ¶ 8. The First Circuit described those struggles in affirming a district court's order holding Popkin in contempt for refusing to answer questions asked by the grand jury. *U.S. v. Doe*, 460 F. 2d 328 (1st Cir. 1972).

In connection with such work, Petitioner has asked the Court to unseal all of the records of two federal grand juries convened in Boston, Massachusetts, in 1971 to investigate the copying and release of the Pentagon Papers. *Id.* ¶ 1; *see* ECF No. 3 at 2; ECF No. 4, ¶ 1. She asks for "all documents chronicling, concerning, and relating to the 1971 Boston grand juries." ECF No. 4, ¶ 48. She "would like to see the records of this grand jury because it constitutes a landmark in the history of the federal government's willingness to investigate and prosecute dissidents, scholars, journalists, and anyone else suspected of involvement with the release and publication of classified government material." ECF No. 4, ¶ 9. Petitioner believes that unsealing the records could answer questions regarding why the investigations were opened and closed, whether the government engaged in illegal wiretapping, and what evidence was used to question Popkin. *Id.*

Popkin has submitted a declaration in support of the petition. *See* ECF No. 10. So have various others who had ties to those and similar proceedings. *See* ECF No. 5 (Noam Chomsky); ECF No. 6 (Daniel Ellsberg); ECF No. 7 (Richard Falk); ECF No. 8 (Mike Gravel); ECF No. 9 (Stewart Perry); ECF No. 11 (Leonard S. Rodberg); ECF No. 12 (Howard Webber).

**Argument**

I. **The Court does not have inherent authority to unseal the requested records.**

It is undisputed that nothing in the text of Fed. R. Crim. P. 6(e) authorizes courts to disclose grand jury records for the purposes of historical or academic interest. And the First Circuit has never addressed the issue of whether a court has inherent authority to disclose grand jury material for reasons other than those listed in Fed. R. Crim. P. 6(e)(3), which contains the recognized exceptions to the general rules of grand jury secrecy. The First Circuit has recognized, however, that the grand jury "serves as a kind of buffer or referee between the Government and the people," is not an arm of the district court, and remains functionally and constitutionally at arm's length from the judicial branch. *In re U.S.*, 441 F.3d 44, 61 (1st Cir. 2006). The First Circuit also has never authorized a disclosure that was unconnected from a judicial proceeding or the enforcement of the criminal laws. And its jurisprudence indicates that disclosure in general, even when contemplated by Rule 6(e), should be narrowly tailored.

Nevertheless, Petitioner asks this Court to hold that a district court has the power to order the disclosure of historically significant records simply because those records are interesting. This Court should decline. As the D.C. Circuit recently held, nothing in the text or history of Rule 6(e) suggests that disclosures are authorized for historically significant events or that a court has power to order a disclosure that is not specifically listed in Rule 6(e)(3). *McKeever*, 920 F.3d at 845. And the Supreme Court has held that federal courts do not have inherent powers to develop rules that circumvent or conflict with the rules of criminal procedure. *Id.*; *see, e.g.*, *Carlisle v. U.S.*, 517 U.S. 416, 426 (1996). Indeed, both the Supreme Court and the First Circuit have consistently recognized that secrecy is integral to the purpose and function of the grand jury and that disclosures, even when permissible under Rule 6(e), should not be routine.

**A. Secrecy is integral to the purpose and function of the grand jury.**

The grand jury is an English institution that is older than our country itself. *Costello v. U.S.* 350 U.S. 359, 362 (1956). It "provide[d] a fair method for instituting criminal proceedings against persons believed to have committed crimes." *Id.* The English grand jury accomplished this goal by staffing itself with laypeople and dispensing with rigid procedural and evidentiary rules so that grand jurors "could act on their own knowledge" and reach their own conclusions "on such information as they deemed satisfactory." *Id.* In England, it "acquired an independence . . . free from control by the Crown or judges." *Id.*

The early colonists brought the grand jury with them from England, and the Founding Fathers included it in the Fifth Amendment to the Constitution, which provides that all federal prosecutions must be instituted by either presentments or indictments by a grand jury. *Id.*; *see* U.S. Const. amend. V. Because a "Grand Jury" is mentioned in the Bill of Rights, and not in the body of the Constitution, "[i]t has not been textually assigned . . . to any of the branches described in the first three Articles. It is a constitutional fixture in its own right." *U.S. v. Williams*, 504 U.S. 36, 47 (1992) (citations & internal quotation marks omitted).

The First Circuit has described the relationship between the District Court, the grand jury, and the Prosecution in the following manner:

> The grand jury, classically, is meant to be an independent check on the ability of the government to bring criminal charges against individuals. It serves as a kind of buffer or referee between the Government and the people, protecting . . . citizens against unfounded criminal prosecutions. The grand jury also has another role, as an investigatory and accusatory body.
>
> The federal grand jury has not been textually assigned to any of the three branches of federal government. The institution is not mentioned in the body of the Constitution, but in the Bill of Rights. It is thus a constitutional fixture in its own right; it is not an arm of the district court. Indeed, the whole theory of its function is that it belongs to no branch of the institutional Government. Thus, the grand jury remains functionally and constitutionally at arm's length from the judicial branch.

*In re U.S.*, 441 F.3d at 61 (brackets, quotation marks, & citations omitted).

Indeed, grand jury proceedings in England were secret, and the Founders imported the rule of secrecy along with the institution. "[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979) (*Douglas Oil*); *cf. U.S. v. Gurry*, 2019 WL 247205, * 2 (D. Mass. Jan. 17, 2019). Secrecy encourages witnesses to testify fully and frankly, minimizes the risk of flight, protects grand jurors from pressure and influences, and secures the privacy of accused who are later exonerated. *Douglas Oil* at 218-19; *In re U.S.*, 441 at 61.

**B. Rule 6(e) does not permit disclosure on the basis of historical significance.**

"Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy." *U.S. v. Sells Engineering, Inc.*, 463 U.S. 418, 425 (1983). To that end, Section (e)(2), titled "Secrecy," flatly prohibits disclosure by grand jurors, government attorneys and their assistants, and other non-witness participants "[u]nless these rules provide otherwise." Fed. R. Crim. P. 6(e)(2)(B). The next section, entitled "Exceptions," limits court-ordered disclosure of grand jury material to the following five enumerated situations:

> (E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:
>
> (i) preliminarily to or in connection with a judicial proceeding;
>
> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;
>
> (iii) at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;
>
> (iv) at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

> (v) at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

Fed. R. Crim P. 6(e)(3)(E). Read together, these provisions "explicitly require secrecy in all other circumstances" not covered by the exceptions. *McKeever*, 920 F.3d at 845.

Other aspects of Rule 6(e) confirm the plain meaning of the text. For example, "[t]he list of exceptions in Rule 6(e)(3) does not lead with the term 'including,' nor does it have a residual exception." *McKeever*, 920 F.3d at 845. And the specificity of the exceptions underscores the point. For example, three exceptions, "provide that a court may authorize disclosure to certain non-federal officials . . . to aid in the enforcement of a criminal law," and "implicitly bar the court from releasing materials to aid in enforcement of civil law." *Id.*

Each exception is thus "the product of a carefully considered policy judgment by the Supreme Court in its rulemaking capacity, and by the Congress" about what social purposes justify disclosure. *Id.* As the Supreme Court has emphasized, the exceptions operate as "an affirmative limitation on the availability of court-ordered disclosure of grand jury materials," and reflect Congress's "judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy." *U.S. v. Baggot*, 463 U.S. 476, 479-80 (1983). Indeed, Congress directly enacted Rule 6(e)(2)'s "[u]nless these rules provide otherwise" language in 1977, and the Supreme Court has warned that "[i]n the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of [grand jury] secrecy has been authorized." *Sells Eng'g*, 463 U.S. at 425; *accord Illinois v. Abbott & Assocs, Inc.*, 460 U.S. 557, 572-73 (1983) (Although Congress "has the power to modify the rule of secrecy . . . the rule is so important, and so deeply-rooted in our traditions, that we will not infer that Congress has exercised such a power without affirmatively expressing its intent to do so").

6

Petitioner does not contend that her request fits within any of Rule 6(e)'s enumerated exceptions. Instead, she argues that the district court has "inherent authority" to release historically significant records. ECF No. 3 at 8-10. But Petitioner does not reconcile this contention with the text or structure of the Rule. Nor does she even acknowledge the Rule's "[u]nless these rules provide otherwise" language.

C. **Petitioner's invocation of inherent power conflicts with Supreme Court precedent.**

Petitioner's contention that the court has inherent authority to order disclosures outside the text of Rule 6(e) is inconsistent with the Supreme Court's admonition that a district court's inherent power "does not include the power to develop rules that circumvent or conflict with the rules of criminal procedure." *Carlisle*, 517 U.S. at 426. Indeed, the Supreme Court has stated that "even a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions." *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 254 (1988) (brackets, citations, & quotation marks omitted).

The Supreme Court thus has recognized that a Federal Rule of Criminal Procedure "is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions." *Id.* at 255. And the policy judgments involved in crafting a particular rule "may not casually be overlooked 'because a court has elected to analyze the question under the supervisory power.'" *Id.* (quoting *United States v. Payner*, 447 U.S. 727, 736 (1980)). An approach to Rule 6(e) that "would allow the district court to create such new exceptions as it thinks make good public policy" would permit precisely the sort of circumvention of the rule that the Supreme Court has forbidden. *McKeever*, 920 F.3d at 845.

Petitioner's understanding of Rule 6(e) also "would render the detailed list of exceptions

7

merely precatory." *McKeever*, 920 F.3d at 845. If Petitioner is correct that these exceptions are not exclusive, then a prosecutor could always, for example, request that a court disclose grand jury matters to state officials for the enforcement of state civil law, even though the exceptions "implicitly bar the court from releasing materials to aid in enforcement of civil law." *Id.* And such an approach would render largely meaningless cases like *U.S. v. Pimental*, which considered whether a court could authorize federal prosecutors to disclose grand jury information to investigators with the Massachusetts Insurance Fraud Bureau, a quasi-public entity that investigated insurance fraud. 380 F.3d 575, 578 (1st Cir. 2004). The court's extensive analysis of whether those investigators qualified as "'government personnel' within the meaning of Fed. R. Crim. P. 6(e)(3)(A)(ii)," *id.* at 579; *see id.* at 590-96, would be entirely academic if a district court could always simply authorize disclosure by invoking its inherent power.

Contrary to Petitioner's contention, *see* ECF No. 3 at 9, *Pittsburgh Plate Glass Co. v. U.S.*, 360 U.S. 395 (1959) (*Pittsburgh Plate Glass*), does not support her argument that a district court has inherent discretion to release records for reasons other than those listed in Rule 6(e). Before stating that "Rule 6(e) is but declaratory of" the principle that whether to authorize a disclosure is "committed to the discretion of the trial judge," the Supreme Court in that case observed that "*any* disclosure of grand jury minutes is covered by" Rule 6(e). *Pittsburgh Plate Glass*, 360 U.S. at 398 (emphasis added). Indeed, *Pittsburgh Plate Glass* itself involved disclosure to a *defendant* in connection with a judicial proceeding under one of Rule 6(e)'s enumerated exceptions. 360 U.S. 395, 397-38 (1959); *see* Fed. R. Crim. P. 6(e)(3)(E)(i). Thus, when discussing a court's discretion in *Pittsburgh Plate Glass*, the Supreme Court referred to the court's discretion to grant or deny a request within one of Rule 6(e)'s enumerated exceptions. Finally, *Pittsburgh Plate Glass* emphasized the key role of grand jury secrecy, noting that "[t]o make public any part of its

proceedings would inevitably detract from [the grand jury's] efficacy. Grand jurors would not act with that independence required of an accusatory and inquisitorial body." *Id*. at 400.

The First Circuit case cited by Petitioner, *In re Grand Jury Proceedings*, 417 F.3d 18, 25-26 (1st Cir. 2005), is likewise inapposite. There, the First Circuit considered whether a court could order a witness who had "suborned perjury of a witness in a related grand jury proceeding" to refrain from discussing a subset of matters occurring before the grand jury with anyone other than his counsel in order to "protect[] an ongoing grand jury investigation from further abuse." *Id.* at 26-27. The First Circuit held that the court had "inherent power . . . *to impose secrecy orders*" for the purpose of protecting the integrity of the grand jury proceeding. *Id*. (emphasis added) An inherent power to prevent disclosure to protect a grand jury proceeding is a far cry from an asserted authority to *disclose* grand jury materials in circumstances not permitted by Rule 6(e).

Although Petitioner generally cites cases from other circuits to support her position, *see* ECF No. 3 at 9-10, she does not rely on them for their textual arguments.[1] Nor could she. The Second Circuit in *In re Petition of Craig*, 131 F.3d 99 (2d Cir. 1997), did not analyze the text of Rule 6(e), and its conclusion is not consistent with the Supreme Court cases emphasizing that the exceptions are exclusive and that district courts may not invoke their inherent authority to circumvent the rules. And the Seventh Circuit in *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016), ignored the "plain" limiting language in Rule 6(e)(2) in concluding that the enumerated exceptions are not exclusive. *McKeever*, 920 F.3d at 848-49; *see Carlson*, 837 F.3d at 769 (Sykes, J., dissenting).

---

[1] In February 2019, a divided panel of the Eleventh Circuit affirmed an order granting access to historically significant grand jury records, relying on binding circuit precedent. *Pitch v. U.S.*, 915 F.3d 704, 705-13 (11th Cir. 2019). But on June 4, 2019, the Eleventh Circuit vacated that opinion and ordered that the case be reheard en banc. *See* Ex. 1.

**D. The amendments to Rule 6(e) also does not support Petitioner's position.**

The history of Rule 6(e) does not support Petitioner's suggestion that exceptions to Rule 6(e) "generally have developed through conformance of Rule 6 to the developments wrought in decisions of the federal courts, not vice versa." ECF No. 3 at 9 (quoting *In re Am. Historical Ass'n*, 49 F. Supp. 2d 274, 286 (S.D.N.Y. 1999)). Previous amendments to Rule 6(e) have generally been prompted by uncertainties in applying the text of the Rules as written. *See, e.g.*, S. Rep. No. 95-354, at 6-7 (1977) (describing "uncertainty" in text and confusion about the circumstances under which a government attorney may disclose grand jury materials to other government personnel). It does not follow that, merely because the Rules are amended to respond to textual ambiguities discussed in court decisions, federal courts are therefore free to invent entirely new exceptions without any colorable textual basis in the Rule.

The original version of Rule 6(e) "continue[d] the traditional practice of secrecy," Fed. R. Crim. P. 6(e), advisory committee's note (1944), by codifying precisely this limited discretion: non-witness participants in the grand jury could disclose matters "only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of a defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed. R. Crim. P. 6(e) (1946). And these limited powers were entirely consonant with traditional notions of inherent authority, which exists to "improve the truth-finding process of the trial" and "prevent parties from reaping benefit or incurring harm from violations of substantive or procedural rules . . . governing matters apart from the trial itself." *Williams*, 504 U.S. at 46. Nothing in this traditional conception of inherent power suggests that it is a blank check to make judgments about what social ends justify the disclosure of grand jury materials.

10

Before the advent of Rule 6(e), district courts possessed a limited authority to order the disclosure of grand jury matters to protect the integrity of judicial proceedings. Thus, courts sometimes exercised their authority to disclose grand jury transcripts for use to refresh the recollection of witnesses at trial, *see U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233-34 (1940), or to obtain the testimony of grand jurors to support a motion to quash an indictment. *See Schmidt v. U.S.,* 115 F.2d 394, 395-97 (6th Cir. 1940).

The first significant revision to Rule 6(e) occurred in 1977, when the rule was amended to permit disclosure to government personnel who were not attorneys, recognizing that "there is often government personnel assisting the Justice Department in grand jury proceedings." Fed. R. Crim. P. 6(e) advisory committee's note (1977). Previously, the section provided for disclosure to government attorneys "to further 'the long established policy that maintains the secrecy of the grand jury in federal courts.'" *Id.* (quoting *U.S. v. Procter & Gamble Co.*, 356 U.S. 677 (1958)). Two years later, Rule 6(e) was amended to mandate that proceedings be recorded to "improve[] administration of criminal justice." Fed. R. Crim. P. 6(e) advisory committee's note (1979). In so doing, it was noted that, "the proposed changes in Rule 6(e) deal only with the recording requirement, and in no way expand the circumstances in which disclosure of grand jury proceedings is permitted or required." *Id.*

Next, in 1983, Rule 6(e)(3)(C) was amended to allow a government attorney to disclose matters occurring before one federal grand jury to another federal grand jury. Fed. R. Crim. P. 6(e) advisory committee's note (1983). Two years later, the rule was amended to allow disclosure to state and local government employees "whose assistance the attorney for the government deems necessary in conducting the grand jury investigation." Fed. R. Crim. P. 6(e) advisory committee's note (1985). In so doing, it was noted that "[i]t must be emphasized that the disclosure permitted

is limited. The disclosure under this subdivision is permissible only in connection with the attorney for the government's 'duty to enforce federal criminal law' and only to those personnel 'deemed necessary to assist' in the performance of that duty.'" *Id.*

It is telling that no prior amendment to Rule 6(e) was prompted by the invention by courts of a new exception to grand jury secrecy on the scale proposed by Petitioner. Indeed, Congress and the Supreme Court in its rulemaking capacity have regularly amended Rule 6(e) to expand the circumstances in which disclosure is permitted. Such amendments would be unnecessary if district courts have the authority to permit disclosures for any purpose they see fit.

In any event, as this non-exhaustive list of amendments illustrates, Congress has taken care, in amending the Rule over time, to carefully define which disclosures are permissible, focusing on disclosures for the purposes of criminal law enforcement and criminal justice. Accordingly, Petitioner is wrong to suggest that the history of Rule 6(e) supports the contention that district courts have the authority to make policy judgments about which social purposes justify disclosure. ECF No. 3, at 9. District courts have *never* possessed the inherent power to disclose grand jury records for any purpose they saw fit.

At the end of the day, witnesses themselves are not prevented from disclosing what happened before the grand jury. And as explained below, nothing prevents Samuel Popkin or any other witness from disclosing their grand jury experience to Petitioner. Popkin's experience has been described in detail in *U.S. v. Doe*, 460 F.2d 328 (1st Cir. 1972).

II.  **Special circumstances do not justify the broad disclosure requested.**

Even circuits that recognize an inherent power in the district courts to disclose matters not listed in Rule 6(e) have cautioned that such authority is "exceedingly narrow and exists only in exceptional circumstances." *U.S. v. Aisenberg*, 358 U.S. F.3d 1327, 1347 (11th Cir. 2004)

(vacating district court decision that had ordered disclosure of all grand jury transcripts). In evaluating such requests, courts in these circuits have relied on the test articulated by the Second Circuit in *In re Petition of Craig*, 131 F.3d 99 (1997) (*Craig*) (affirming the denial of a doctoral candidate's request to disclose the grand jury testimony of a government official accused of espionage). The *Craig* factors are:

(i) the identity of the party seeking disclosure;

(ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure;

(iii) why disclosure is being sought in the particular case;

(iv) what specific information is being sought for disclosure;

(v) how long ago the grand jury proceedings took place;

(vi) the current status of the principals of the grand jury proceedings and that of their families;

(vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public;

(viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and

(ix) the additional need for maintaining secrecy in the particular case in question.

*Id.* at 106. The fourth Craig factor cautions against disclosure here.

Under that factor, Petitioner's request should be denied because it is not narrowly tailored. Petitioner seeks to unseal "all documents chronicling, concerning, and relating to the 1971 Boston grand juries." ECF No. 4, ¶ 48. She "would like to see the records of this grand jury because it constitutes a landmark in the history of the federal government's willingness to investigate and prosecute dissidents, scholars, journalists, and anyone else suspected of involvement with the release and publication of classified government material." *Id.* ¶ 9. "But the special circumstances

exception is not intended for indiscriminate application." *In re Shepard*, 800 F. Supp. 2d 37, 40 (D.D.C. 2011) (denying disclosure request that encompassed all the testimony and materials associated with every witness before multiple grand juries); *see Aisenberg*, 358 F.3d at 1350 (explaining the district court erred by, among other things, not considering whether "the request is structured to cover only material so needed");[2] *cf. Craig*, 131 F.3d at 106 (noting "there are obvious differences between releasing one witness' testimony, the full transcript, or merely the minutes of the proceeding").

In discussing this factor, Petitioner recognizes that her request is extremely broad. *See* ECF No. 3 at 16. She argues that unsealing those records "is the only way to answer [the] questions and vindicate the public's 'significant . . . interest in ensuring the pages of history are based upon the fullest possible record.'" ECF No. 3 at 16 (quoting *In re American Historical Ass'n*, 49 F. Supp. 2d 274, 295 (S.D.N.Y. 1999)). While the *American Historical Ass'n* district court reached that conclusion, several other courts considering that specific issue have not. *Aisenberg*, 358 F.3d at 1350; *Craig*, 131 F.3d at 106-107; *In re Shepard*, 800 F. Supp. 2d at 40; *cf. In re Nichter*, 949 F. Supp.2d 205, 212-14 (D.D.C. 2013) (denying request to unseal all the grand jury information in a criminal case for various reasons, including the reason that the records would not assist the petitioner in solving the questions underlying the request). Notably, the request granted in *Carlson* was much narrower than the extremely broad request presented by Petitioner—Carlson asked for specific transcripts and did not seek to unseal the entire record. *See Carlson v. U.S.*, 109 F. Supp. 3d 1025, 1027 (N.D. Ill. 2015), *aff'd* 837 F.3d 753 (2016).

---

[2] In so doing, the Eleventh Circuit focused on the factors that are required for disclosure under an enumerated exception to Rule 6(e). *Aisenberg*, 358 at 1350. It would not make sense for people who want disclosure under an enumerated exception to be held to a higher standard than those, like Petitioner, who seek a disclosure that is not contemplated by the rules.

Moreover, it is also significant that at least some of the specific information sought by Petitioner—namely the Popkin testimony—has already been publicly aired. In 1972, the First Circuit discussed what occurred regarding Popkin before the grand jury in holding that Popkin should have answered some of the questions posed to him. *Doe*, 460 F.2d at 329-32. As Popkin and others remain alive, *see* ECF Nos. 5-12, and can disclose their experiences to Petitioner, an order disclosing all grand jury information regarding the investigation is simply not needed here. *See Aisenberg*, 358 F.3d at 1352 (holding that district court erred in ordering disclosure where the government's conduct has already been revealed and publicly aired).

In sum, Petitioner's overly broad request for *everything* related to two grand jury investigations is not a targeted request for specific information that is crucial to her mission and the interest of the public. The "special circumstances" on which courts in some circuits have relied to release records are not present here.

## Conclusion

For the reasons stated and on the authorities cited in this memorandum of law, the United States respectfully requests that this Court deny the petition and dismiss the case under Fed. R. Civ. P. 12(b)(1) or 12(b)(6).

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

*/s/ Annapurna Balakrishna*
Annapurna Balakrishna, BBO # 655051
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
Tel.: 617-748-3111
June 14, 2019                                                  Email: annapurna.balakrishna@usdoj.gov

**CERTIFICATE OF SERVICE**

    I, Annapurna Balakrishna, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

|  |  |
|---|---|
|  | */s/ Annapurna Balakrishna* |
|  | Annapurna Balakrishna |
| Dated: June 14, 2019 | Assistant U.S. Attorney |