## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JILL LEPORE

       Petitioner,

v.

UNITED STATES OF AMERICA,

       Respondent.

Miscellaneous Action No. 18-mc-91539-ADB

## MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS

### PRELIMINARY STATEMENT

Contrary to the government's contentions, this Court has inherent supervisory authority to disclose grand jury records and should exercise that authority to disclose the historically significant records sought by Professor Lepore. Neither Federal Rule of Criminal Procedure 6(e) nor the common law limit this Court's authority to disclose grand jury matters. Rule 6(e) has not displaced the traditional discretion of district courts in these circumstances, and the relevant common law test laid out in *In re Petition of Craig*, 131 F.3d 99, 106 (2d Cir. 1997), weighs heavily in favor of disclosure in this case. The records of grand juries convened in 1971 to investigate the release of the Pentagon Papers undisputedly chronicle an episode of great historical significance, and none of the rationales for grand jury secrecy offered up by the government remotely apply to the present facts. Disclosure is both permissible and proper. This Court should pull back the curtain of secrecy that currently shields these historic records from scholarly analysis.

## ARGUMENT

I.   **THIS COURT POSSESSES INHERENT AUTHORITY TO DISCLOSE THE GRAND JURY RECORDS REQUESTED BY PROFESSOR LEPORE**

Courts have inherent authority over their own records, including grand jury records, and that authority includes the discretion to disclose them. It is therefore within this Court's power to disclose the records of the 1971 Pentagon Papers grand juries.

The government notes that the Constitution does not assign the grand jury to either the executive or the judicial branch, *see* ECF No. 31 at 4, but it elides that the Supreme Court for more than a century has recognized that the grand jury conducts a "judicial inquiry," *Hale v. Henkel*, 201 U.S. 43, 66 (1906) (*rev'd on other grounds*, *Murphy v. Waterfront Com'n of New York Harbor*, 378 U.S. 52 (1964)), and is "part of the judicial process." *Cobbledick v. U.S.*, 309 U.S. 323, 327 (1940). The advent of the Federal Rules of Criminal Procedure (FRCP) in 1946 did not change the Court's view; it has continued to hold consistently that the grand jury "is an arm of the court," *Levine v. U.S.*, 362 U.S. 610, 617 (1960), and acts under "judicial auspices." *U.S. v. Williams*, 504 U.S. 36, 47 (1992).

Since the grand jury is a "part of the judicial process," the records produced by a grand jury are judicial records. The Supreme Court has left no doubt that grand jury "minutes and transcripts" are "records of the court." *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 684-85 (1958) (Whittaker, J., concurring). Four Circuit Courts of Appeal have squarely reached the same conclusion. *See, e.g., Carlson v. U.S.*, 837 F.3d 753, 758 (7th Cir. 2016) (grand jury "minutes and transcripts are necessarily records of the court") (citations & internal quotation marks omitted); *Standley v. Dep't of Justice,* 835 F.2d 216, 218 (9th Cir. 1987) ("Grand jury materials are records of the district court"); *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 31 (2d Cir. 1981) ("[G]rand jury proceedings remain the records of the courts, and

courts must decide whether they should be made public"); *United States v. Penrod*, 609 F.2d 1092, 1097 (4th Cir. 1979) (grand jury minutes "are not the property of the attorneys or agents of the government" but rather "are records of the court"); *but see*, *McKeever v. Barr*, 920 F.3d 842, 848 (2019) (questioning whether Rule 6(e)'s reference to "'a matter appearing before the grand jury'" refers "to a 'judicial record'").

Just as "[e]very court has supervisory power over its own records and files," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), "the court that supervised the grand jury" has "control over the transcripts." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 225 (1979). This is true even when, as is the case here, the grand jury records are stored at the National Archives and Records Administration (NARA). *Carlson*, 837 F.3d 753 at 759 (explaining that "Rule 6(e)(1) . . . indicates that the grand jury materials are subject to the court's control" despite their being stored at NARA). As the Supreme Court made clear before implementation of the FRCP in 1946, once "the grand jury's functions are ended" disclosure of grand jury testimony "is wholly proper where the ends of justice require it" and "is a matter which rests in the sound discretion of the court." *U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233-34 (1940). Absent an express statutory restriction on that discretion, a court may order the disclosure of a grand jury record just like any other judicial record. As discussed in the initial motion papers and in Point II below, no such restriction prohibits the release of the records requested by Professor Lepore, and their unique historical significance warrants their disclosure.

The government notes that there are restrictions on the power of district courts to interfere with ongoing grand jury proceedings, ECF No. 31 at 3-4, but the cases it cites are entirely inapposite. They address attempts to alter fundamentally the nature of the grand jury or to exert *de facto* control over the process in ways expressly forbidden by statute or the common

law.  In *Williams*, the Supreme Court held that courts could not impose a legal obligation on

prosecutors to present exculpatory evidence to the grand jury, 504 U.S. at 52, because doing so

would "alter the grand jury's historical role, transforming it from an accusatory to an

adjudicatory body." *Id*. at 51.  The First Circuit later applied *Williams* in a case where the

district court had postponed the start of a criminal trial as it investigated, "over a protracted

period of time," its suspicions that prosecutors had eavesdropped on a grand jury and leaked

grand jury material to the media.  *In re U.S.*, 441 F.3d 44, 48-49 (1st Cir. 2006).  Quoting

*Williams*, the First Circuit noted that a district court's power to "remedy misconduct" was

limited to situations in which that conduct violated one of the "few, clear rules which were

carefully drafted and approved by [the Supreme] Court and by Congress to ensure the integrity

of the grand jury's functions." *Id.* at 57 (internal quotation marks omitted).

Professor Lepore's petition does not present remotely similar concerns regarding

interference with the fundamental nature of grand juries, or with prosecutors' latitude in

conducting them.  It simply asks this Court to exercise, consistent with Supreme Court

precedent, its discretionary authority over grand jury records.

## II.     THE GOVERNMENT FAILS TO ESTABLISH ANY BAR TO EXERCISING THE COURT'S INHERENT POWER TO DISCLOSE THE RECORDS SOUGHT BY PROFESSOR LEPORE

Neither the FRCP nor the common law counsel against releasing the records at issue.

The government argues that Rule 6 bars any discretionary disclosure, but a full reading of the

Rule demonstrates no such thing; its secrecy provisions do not apply to courts and do not purport

to supplant their inherent authority over grand jury records.  The government is on no more solid

ground in pointing to Supreme Court cases emphasizing the importance of grand jury secrecy.

Neither the holdings of those cases nor their underlying rationale apply to the release of decades-

old grand jury material of potentially immense historic significance.  Rather, the relevant legal

4

standard governing the release of such historically significant grand jury records was established by *In re Petition of Craig* and applied in *Carlson v. United States*.  Professor Lepore's petition easily passes the *Craig* test and this Court ought to exercise its discretion to release the historically significant records she seeks.

### A.       Rule 6(e) Does Not Preclude Disclosure Here

Rule 6(e) does not restrict this Court's authority to grant Professor Lepore's petition because that rule, by its plain language, imposes no obligation of secrecy on district courts. While the FRCP supersede courts' inherent authority on the matters they address (*see, e.g., Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 254-55 (1988); *Carlisle v. U.S.*, 517 U.S. 416, 426 (1996)), they do not restrict courts' authority on matters where they are silent.

Rule 6(e)(2)(B) provides an exhaustive list of "persons" who "must not disclose a matter occurring before the grand jury" and this list does not include judges or the courts.  As the Sixth Circuit has noted, Rule 6(e) "applies only to grand jurors; interpreters; court reporters; operators of recording devices; persons transcribing recorded testimony; attorneys for the government; and . . . government personnel . . .  The rule imposes no obligation of secrecy on persons or entities that are not included on that list." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 846–47 (6th Cir. 2011).  This interpretation of the Rule is necessitated by its plain language.  Rule 6(e)(2)(A) makes clear that "[n]o obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)."  Since courts and judges are not listed in Rule 6(e)(2)(B) they are not obligated to secrecy by the FRCP.[1]

---

[1] This explicit limitation on the secrecy obligations has always been a part of the FCRP.  Before 2002, Rule 6(e)(2) read: "A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules.  No obligation of secrecy may be imposed on any person except in accordance with this rule.  A knowing violation of Rule 6 may be punished as a contempt of court."  Fed. R. Crim. P. 6(e)(2) U.S.C.A. (2001).  Rule 6(e)(2) was split into two sections when the law was amended in 2002 to make the specific scope of the

This omission of courts from Rule 6(e)(2)(B) is especially meaningful when placed in broader context. The FRCP include frequent references to "the court," prescribing limitations on what it must, may, and must not do. *See, e.g.*, Fed. R. Crim. P. 6(a)(1) ("court must order that one or more grand juries be summoned"); Fed. R. Crim. P. 6(a)(2) ("court may also select alternate jurors"); Fed. R. Crim. P. 11(c)(1) ("court must not participate" in negotiations on a plea agreement). The absence of any reference to "the court" in Rule 6(e)(2)(B) is conspicuous. The Rule's secrecy obligation simply has no application to courts. Therefore, the government's observation that Rule 6(e)'s secrecy provisions apply "[u]nless these rules provide otherwise," ECF No. 31 at 7, is irrelevant. Nor does it matter that the disclosure contemplated here is not explicitly listed in Rule 6(e)(3)(E)—the absence of a germane exception to a Rule that does not apply in the first place is simply immaterial.

The government's extensive reliance on the D.C. Circuit's opinion in *McKeever v. Barr* is also misplaced because that case erroneously sees physical custody as the key determinant of who controls grand jury records. According to the *McKeever* court, "Rule 6 assumes the records are in the custody of the Government, not that of the court," and therefore "[b]ecause an 'attorney for the government' is one of the 'persons' subject to grand jury secrecy in Rule 6(e)(2)(B), the Rule need not also list the district court as a 'person' in order to make the court, as a practical matter, subject to the strictures of Rule 6." *McKeever*, 920 F.3d at 842. This reasoning cannot be squared with either the plain text of Rule 6(e) or with the rest of the FRCP.

The practical question of who maintains custody of grand jury records has no effect on who is (and is not) bound by Rule 6(e)'s secrecy requirement. The court and the government are

---

secrecy obligation "more easily understood." *See* Fed. R. Crim. P. 6 advisory committee's note to the 2002 amendment.

not the same, irrespective of where grand jury records are housed.  Rule 11(c)(1) makes just this

point.  It references both an "attorney for the government" and "the court," making clear that

they are independent actors with separate roles and obligations.  *See* Fed. R. Crim. P. 11(c)(1).  It

follows that if Congress in Rule 6(e) wished to impose an obligation of secrecy on "the court," it

would have done so.  It did not.

Moreover, even if Rule 6(e) were read to "assume[] the records are in the custody of the

Government," *McKeever*, 920 F.3d at 848, it would not follow that the Rule conflates *custody*

over records with the *authority* (or lack thereof) to disclose them.  This, too, is made clear by the

text of Rule 6(e): an "attorney for the government will retain control" of grand jury records

"*[u]nless the court orders otherwise*."  Fed. R. Crim. P. 6(e)(1) (emphasis added).  Under Rule

6(e), even records in the custody of government attorneys must be returned to the district court's

custody upon the district court's order.  Simply put, the notion that "courts" did not need to be

expressly bound by Rule 6(e) secrecy because government attorneys hold grand jury records

cannot be reconciled with the language of Rule 6(e) itself.

Nor does a straightforward reading of the Rule's text "render the detailed list of

exceptions merely precatory."  ECF No. 31 at 7-8 (quoting *McKeever*, 920 F.3d at 845).  Any

disclosure ordered by a court that directly contravened one of Rule 6(e)(3)(E)'s enumerated

exceptions would violate the Rule and constitute an abuse of discretion.  For example, Rule

6(e)(3)(E)(i) permits a court to authorize disclosure of a grand-jury matter "preliminarily to or in

connection with a judicial proceeding."  In interpreting that Rule, then located at Rule

6(e)(3)(C)(i), the Supreme Court held that "disclosure is not appropriate for use in an IRS audit

of civil tax liability."  *U.S. v. Baggot*, 463 U.S. 479, 480 (1983).  Thus, if a district court—

relying on its inherent authority rather than on Rule 6(e)(3)(E)(i)—ordered the disclosure of

grand jury records to the IRS for the purposes of an audit it would be impermissibly circumventing a Rule. This is just one example of many in which Rule 6(e)(3)(E) maintains restrictions that are far from precatory.

It is for this reason that the government's parade of horribles is without merit. *See* ECF No. 31 at 8. By way of example, the government warns that the analysis in *U.S. v. Pimental*, 380 F.3d 575 (1st Cir. 2004), about whether investigators within the Massachusetts Insurance Fraud Bureau qualified as "government personnel" for purposes of Rule 6(e)(3)(A)(ii), "would be entirely academic if a district court could always simply authorize disclosure by invoking inherent power." ECF No. 31 at 8. This is not so. The list of exceptions in Rule 6(e)(3)(E) embodies policy judgements that expressly permit and prohibit specific types of disclosure, but do not purport to abolish the court's inherent authority to disclose in other contexts. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 631 (1962) ("Neither the permissive language of [Rule 41(b)] . . . nor *its policy* requires us to conclude that it was the purpose of the Rule to abrogate the power of courts" (emphasis added)). Courts cannot simply invoke their inherent authority to contradict Rule 6(e) as the government suggests, but rather must comply with the contours of the Rule's exceptions in cases like *Pimental*.

Conversely, nothing in the text of Rule 6(e)(3)(E) prohibits courts from using their inherent authority where it is not expressly constrained. In fact, the Advisory Committee on Criminal Rules has suggested the opposite.

### 1.    The Advisory Committee on Rules of Criminal Procedure has recognized the responsible exercise by district courts of their inherent authority to release grand jury records of historical significance

The government finds it "telling that no prior amendment to Rule 6(e) was prompted by the invention by courts of a new exception to grand jury secrecy on the scale proposed by Petitioner." ECF No. 31 at 12. It is telling, but for a different reason than the government

contends—the decision *not* to amend Rule 6 was motivated by a recognition that courts already possess the inherent authority to unseal historically significant grand jury records and have been exercising that authority responsibly for years.

In 2011, after the Second Circuit in *Craig* recognized courts' inherent authority in this area, Attorney General Eric Holder responded by proposing an amendment to Rule 6 which would have codified that authority in the FRCP.  In deciding not to pursue the Attorney General's proposal, the Advisory Committee concluded that "in the rare cases where disclosure of historically significant materials had been sought, district judges had reasonably resolved applications by reference to their inherent authority."  Advisory Comm. on Crim. Rules, Minutes 7 (Apr. 2012).[2]  The robust legal and policy analysis undergirding that conclusion strongly supports the proposition that this Court has the inherent authority to release historically significant grand jury records.  *See* Advisory Comm. on Crim. Rules, Agenda Book 209-71 (Apr. 2012) ("Agenda Book").[3]

Nor is the government correct in denying that "exceptions to Rule 6(e) generally have developed through conformance of Rule 6 to the developments wrought in decisions of the federal courts, not vice versa."  ECF No. 31 at 10 (citation & internal quotation marks omitted). In response to a request from the Rule 6 Subcommittee, Professors Sara Sun Beale and Nancy King, the Advisory Committee's Reporters, noted that

> [T]he previous administrative precedents of the Advisory Committee include three instances in which the Committee's attention was drawn to decisions authorizing disclosures that may not have been provided for in the rules. In none of these cases did the Advisory Committee treat these judicial decisions as improper. In one instance, the Committee appears to have relied on the existence of judicial authority to order disclosure in exceptional cases as one of the justifications for declining to amend Rule

---

[2] Available at https://www.uscourts.gov/sites/default/files/fr_import/criminal-min-04-2012.pdf.

[3] Available at https://www.uscourts.gov/sites/default/files/fr_import/CR2012-04.pdf.

6(e), and in the other two instances the Committee recommended amendments incorporating what it discerned to be a trend in the case law.

Agenda Book 212.  *See also id.* at 267-270 (discussing developments in Rule 6(e)'s history occurring in 1974, 1976, and 1983).

## 2. The First Circuit has held that courts retain inherent authority to act outside the bounds of Rule 6(e)

While the First Circuit has never squarely addressed the question "of whether a court has inherent authority to disclose grand jury material for reasons other than those listed in Fed. R. Crim. P. 6(e)(3)," ECF. No. 31 at 3, it has held more broadly that "[Rule 6(e)]'s phrasing can, and should, accommodate rare exceptions premised on inherent judicial power."  *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005).  That case pertained to the imposition of a secrecy order on a person not listed at Rule 6(e)(2)(B), namely a witness who had "suborned perjury of a [separate] witness in a related grand jury proceeding."  *Id.*  In attempting to distinguish that case from this one, the government contends that "[a]n inherent power to prevent disclosure to protect a grand jury proceeding is a far cry from asserted authority to *disclose* grand jury materials in circumstances not permitted by Rule 6(e)."  ECF No. 31 at 9.  This is wrong for two reasons, which also fortify why *McKeever* is not good law in this Circuit.

First, *In re Grand Jury Proceedings* acknowledges the continuing authority of district courts to act outside the boundaries of Rule 6.  In that case the First Circuit upheld a restriction on the disclosure of grand jury material by a person not expressly identified in Rule 6(e)(2)(B), despite the provision in Rule 6(e)(2)(A) that "[n]o obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)."  The First Circuit found that courts may invoke their inherent authority to contravene the literal wording of Rule 6(e).  *See* 417 F.3d at 26. It follows *a fortiori* that courts may exercise their inherent authority in ways that do not contravene the literal wording of the Rule.  Simply put, in holding that courts have the authority

to impose secrecy restrictions beyond those imposed by Rule 6(e), the First Circuit necessarily recognized courts' authority to act where Rule 6(e) is silent.

Second, the scope of inherent authority recognized in *In re Grand Jury Proceedings* includes authority to disclose grand jury material.  The First Circuit noted that "[t]hose who drafted and approved Rule 6(e) seemingly intended to do no more than abolish a general practice existing in some districts of automatically silencing grand jury witnesses as to their testimony." *In re Grand Jury Proceedings*, 417 F.3d at 18.  The court then supported its holding by quoting the Eleventh Circuit's observation that, "[a]lthough Rule 6(e)(3) enumerates the exceptions to the traditional rule of grand jury secrecy[,] . . . the *district courts have inherent power beyond the literal wording of Rule 6(e)(3) to disclose grand jury material*." *Id.* at 26 n.9 (quoting *United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004) (emphasis added)).

In short, nothing in Rule 6(e) prohibits this court from exercising its inherent authority to disclose the historically significant records sought by Professor Lepore.

### B.    The Common Law Favors Disclosure of the Records Sought by Professor Lepore

This Court should evaluate Professor Lepore's petition under the rigorous standard courts have developed for determining when the disclosure of historically significant grand jury records is warranted.  *See* ECF No. 3 at 10-11.  Under that exacting test, the records at issue here should clearly be disclosed—they are of uncontested historical significance, Professor Lepore is uniquely positioned to convey their significance to other scholars and to the public, and there is no countervailing interest in continued secrecy.  The government makes no claim to the contrary.

In *Craig*, the Second Circuit articulated nine factors for trial courts to "consider when confronted with these highly discretionary and fact-sensitive 'special circumstances' motions." *Craig*, 131 F.3d at 106.  Circuits that have acknowledged the inherent power of courts to disclose

11

historically significant grand jury matters have adopted the *Craig* factors as the appropriate test for determining when to exercise that power.  *See, e.g., Carlson*, 837 F.3d at 766-67 (reviewing the district court's *Craig* analysis for abuse of discretion); *Pitch v. United States*, 915 F.3d 704, 710-13 (11th Cir. 2019) (engaging in *Craig* analysis), *vacated pending rehearing en banc* --- F.3d ---- (11th Cir. 2019).  This Court should do the same.

### 1.    The "particularized need" test emphasized by the government is the wrong standard to apply in this case

Conceding the historical significance of the records at issue and that seven of the nine *Craig* factors favor disclosure, the government argues that the request should simply be rejected as too broad.  This contention wrongly conflates two distinct legal tests.  The government stresses a line of cases that developed a "particularized need" test for evaluating requests for grand jury records (*see, e.g.*, ECF No. 31 at 5-6, 8), but those cases address an entirely different set of factual and legal questions and the test they apply has no relevance here.

The "particularized need" test was developed to address situations where grand jury records are requested because they may be useful in a separate legal or administrative proceeding.  The Supreme Court has made it clear that private, federal, and state litigants may not use grand juries as a shortcut to obtaining records and information otherwise available to them through legal or administrative processes.  The "particularized need" test had its genesis in *United States v. Procter & Gamble Company*, in which the Supreme Court held that a private litigant was not entitled to receive grand jury material as a substitute for obtaining the same information via the established processes of civil discovery.  *See U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 681-84 (1958).  In *Douglas Oil* the Court laid out a three-part test, the first prong of which requires a demonstration that the material sought "is needed to avoid a possible injustice in another judicial proceeding."  *Douglas Oil*, 441 U.S. at 225.

12

As the test's origins make clear, it does not apply to Professor Lepore's petition for at least two reasons.  First, the particularized need test applies to situations where litigants are pursuing grand jury material as an end-run around an established procedure for obtaining the same or similar information.  In *Douglas Oil* a private party engaged in civil litigation was seeking to circumvent the civil discovery process.  *See Douglas Oil*, 441 U.S. at 216.  In *United States v. Sells Engineering*, Department of Justice civil attorneys attempted to acquire grand jury materials through an automatic disclosure under Rule 6(e)(3)(A), rather than by demonstrating a particularized need under Rule 6(e)(3)(E) (then located at Rule 6(e)(3)(C)).  *See U.S. v. Sells Engineering, Inc.*, 463 U.S. 418, 442 (1983).  And, in *Illinois v. Abbott*, the Attorney General of Illinois asserted that he was entitled to grand jury material pursuant to a federal antitrust statute, and therefore did not have to make a showing under Rule 6(e).  *See Illinois v. Abbott & Assocs, Inc.*, 460 U.S. 557, 559-61 (1983).

Here, by contrast, Professor Lepore is interested in the grand jury records themselves, for their unique historical significance.  She is pursuing the only option available for obtaining them and cannot properly be turned away on the grounds that a different and more appropriate legal or administrative process is available.

Second, the secrecy interests at stake in "particularized need" cases are inherently very high, whereas the secrecy interest here is minimal or non-existent.  The "particularized need" cases cited by the government occurred in the context of ongoing legal proceedings ancillary to the grand jury investigations themselves.  These are the circumstances—attempts to use ongoing or recently-concluded grand juries as clearinghouses for information about a grand jury target that might be used against that target in a separate proceeding—in which the interest in grand jury secrecy is at its apex.

On the other hand, Professor Lepore's petition implicates none of the policy rationales for grand jury secrecy, such as "encourag[ing] witnesses to testify fully and frankly, minimiz[ing] the risk of flight, protect[ing] grand jurors from pressure and influences, and secur[ing] the privacy of accused who are later exonerated." ECF. No. 31 at 5 (citing *Douglas Oil*, 41 U.S. at 218-19; *In re U.S.*, 441 F.3d at 61). The grand juries at issue here ceased their work over 45 years ago, and the government makes no plausible argument that a decision to disclose half-century-old records concerning one of the most publicized political incidents in American history would somehow influence witnesses in future grand jury proceedings. *See* ECF No. 3 at 17 (citing *In re Am. Historical Ass'n*, 49 F. Supp. 2d 274, 292 (S.D.N.Y. 1999) (emphasizing that time-delayed disclosures of historically important records have an insignificant inhibiting effect on witnesses); *In re Kutler*, 800 F. Supp. 2d 42, 49 (D.D.C. 2011) (same)). Moreover, while the government invokes the general principle that "the privacy of accused who are later exonerated" should be protected (*see* ECF No. 31 at 2) it makes no suggestion that this principle is actually put at risk by Professor Lepore's petition. The public record suggests the opposite. Daniel Ellsberg, the primary target of the government's sprawling investigation into the Pentagon Papers incident, supports Professor Lepore's petition, as do several others who found themselves drawn into the Boston grand jury proceedings. *See* ECF No. 5-12.

What's more, the government's reliance on *Pittsburgh Plate Glass Company v. United States* fails to fully explain the Court's reasoning or holding in that case, which reaffirmed judicial discretion rather than cabined it. In *Pittsburgh Plate* the Court noted in passing that

> any disclosure of grand jury minutes is covered by [Rule] 6(e). . . . In fact, the federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle, and Rule 6(e) is but declaratory of it.

*Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 398–99 (1959).  Read in isolation

there is an apparent contradiction between the suggestion that "any" disclosure is covered by

Rule 6(e), and the immediately following statement that reaffirms the discretion of trial courts.

But when the Court noted that Rule 6(e) covers "any" disclosure of grand jury records it was not

hemming in trial courts.  Rather, it was rejecting a claim that a recently-passed statute and a

previous Supreme Court holding overrode the FRCP and the discretion of trial courts, and

*mandated* the disclosure of grand jury material in certain circumstances.  *See id.* at 398.  Thus,

the Court in *Pittsburgh Plate* was defending judicial discretion in the face of legal and statutory

interpretations that were argued to undermine it.  This Court should similarly refuse to abandon

its discretion without sufficient justification.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47

(1991) (the Court will not "lightly assume a Rule is intended to diminish the "scope of a court's

inherent power" (citation omitted); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962)

(permissive rules do not "abrogate the power of the courts" to exercise "internet power" in the

absence of a contradictory rule).

### 2.     The exceptional circumstances in this case weigh in favor of disclosure

The government offers no response on seven *Craig* factors.  Nor could it.  Jill Lepore is

an eminent historian and author seeking disclosure of historically significant grand jury records

for the purpose of improving the public's understanding of a watershed moment in American

history.  These investigations, targeting academics and dissidents alike, concluded nearly fifty

years ago.  And, as the government acknowledges, "[Samuel] Popkin has submitted a declaration

in support of the petition" as "have various others who had ties to those and similar

proceedings."  ECF. No. 31 at 2.

In totality, the *Craig* factors weigh heavily in favor of disclosure.  *See* ECF No. 3 at 10-

19 (discussing all nine *Craig* factors).  Not only are the facts in this case unique and compelling

in their significance, but the government offers no reason why these particular records ought to remain secret.  The time has come to pull back the curtain of secrecy surrounding these historically significant records and grant Professor Lepore's request.

### 3.     The government offers two counterarguments, both of which fail to override the exceptional circumstances in this case

The government makes two arguments against disclosure under the *Craig* factors.  One argument discusses the fourth factor, which asks "what specific information is being sought for disclosure," 131 F.3d at 106, and the other concerns the seventh factor, "the extent to which the desired material—either permissibly or impermissibly—has been previously made public."  *Id*.

Turning first to the seventh factor, the government says "it is . . . significant that at least some of the specific information sought by Petitioner—namely the Popkin testimony—has already been publicly aired."  ECF No. 31 at 15.  It is indeed significant, but the government gets the seventh factor backwards.  As the Second Circuit has explained, "the extent to which the grand jury material in a particular case has been made public is clearly relevant because even partial previous disclosure often undercuts many of the reasons for secrecy."  *Craig*, 131 F.3d at 106.

Instead of relying on *Craig*, which it otherwise accepts, the government cites *U.S. v. Aisenberg*, 358 F.3d at 1352, for the proposition that disclosure orders are improper in cases where the government's conduct has already been made public.  ECF No. 31 at 15.  This reliance is misplaced for two reasons.

First, in addressing a disclosure request made pursuant to both Rule 6(e)(3)(C)(i)(I) (now Rule 6(e)(3)(E)(i)) *and* the district court's inherent authority, *Aisenberg* improperly conflated the "particularized need" standard of *Douglas Oil* with the *Craig* analysis.  *See Aisenberg,* 358 F.3d at 1347-48.  As discussed above, the particularized need analysis is not appropriate here given

the absence of an alternative process for disclosure and the minimal privacy interests at stake,

and it is the *Craig* standard alone that governs.  The government argues that applying the *Craig*

standard would "not make sense" because it would hold parties seeking disclosure pursuant to an

enumerated exception under Rule 6(e)(3)(E) to a "higher standard than those . . . who seek a

disclosure that is not contemplated by the rules."  ECF No. 31 at 14 n.2.  This argument confuses

higher standards with different standards.  As the Second Circuit made clear:

> The burden [on Petitioner], though greater when the issue, as in the case
> before us, involves the exercise of discretion outside the bounds of Rule
> 6(e), is equally contextual.  The greater burden is just one reason why
> petitioner's contention that the district court failed to conduct the test
> "prescribed" by *Douglas Oil* cannot stand. . . . A more lenient test
> appropriate for Rule 6(e) cases cannot simply be applied to non–6(e) cases
> as well.  That is why we use the label "special circumstances" for cases
> outside of Rule 6(e).

*Craig*, 131 F.3d at 106 n.10.  Thus, the "special circumstances" analysis the Court should apply

here imposes a *greater* burden than the traditional test.

Contrary to the government's concerns, the *Craig* test is applied with appropriate

deference to the principles of grand jury secrecy.  As the Second Circuit noted in *Craig*, the

"baseline presumption against disclosure," ensures that "permitting departures from Rule 6(e) . .

. will not unravel the foundations of secrecy upon which the grand jury is premised."  *Craig*, 131

F.3d at 103-4.  Rather, such inherent authority is "fully consonant with the role of the

supervising court."  *Id*.; *see also Carlson,* 837 F.3d at 762 (explaining that a court's "limited

inherent supervisory power has historically included the discretion to determine when otherwise

secret grand-jury materials may be disclosed").

Second, the facts in *Aisenberg* are not comparable to the facts in this case.  *Aisenberg*

dealt with a request intended to expose a "bad faith prosecution."  358 F.3d at 1352.  The facts

surrounding that prosecution, though, had "been publicly aired at great length."  *Id*.  Thus, as the

court explained, the petitioners in that case had "not shown a compelling and particularized need for any portions of the grand jury transcripts . . . Indeed, the overwhelming nature of this evidence apparently led even the government to move to dismiss the indictment and to concede that attorney's fees were owed." *Id*. at 1350-51. In other words, the Aisenbergs did not need the disclosure of grand jury material to achieve their ends. This underscores, again, that the particularized need test does not apply to requests for historically-significant grand jury records. That some information about the Pentagon Papers grand juries is already public demonstrates the minimal or non-existent secrecy interest at stake; it does not undermine the substantial historic interest in disclosure. The fragmentary public record, or the opportunity to ask elderly people to recall events from half a lifetime ago, are not substitutes for providing a historian with access to primary sources relevant to her work and to American history more generally.

Applying the fourth factor, the government argues that Professor Lepore's request is "not narrowly tailored," ECF No. 31 at 13. The argument fails for similar reasons. The government again inaptly relies on *Aisenberg*, as well as *In re Shepard*, 800 F. Supp. 2d 37 (D.D.C. 2011); *In re Nichter*, 949 F. Supp. 2d 205 (D.D.C. 2013); and *Craig*, 131 F.3d 99. As noted above, *Aisenberg* incorporated a different standard of review than appropriate here and, unlike Professor Lepore, petitioners in that case did not need further information to achieve their ends.

*In re Shepard* is equally off point. In that case*,* the court evaluated overbreadth in a context where secrecy interests were still present, and compared the petition it was considering with that in *In re Kutler*, 800 F. Supp. 2d 42. In making its comparison, the court explained that "[t]he Kutler petition . . . include[ed] several declarations demonstrating the minimal need to maintain the secrecy of President Nixon's testimony. Mr. Shepard has submitted only one declaration—his own—which does nothing to dispel the Court's secrecy concerns." *In re*

*Shepard*, 800 F. Supp. 2d at 40.  Recognizing the significance of the privacy concerns, the government's comparison of *Shepard* to the present case loses force.  Professor Lepore has provided eight declarations that each voice support for disclosure, ECF No. 5-12, and the government in response advances no specific secrecy interest at all.

Similarly, the court in *In Re Nichter*, in denying a petition in the interest of secrecy, explained that "[d]isclosure may be appropriate following the death of all persons named in the grand jury materials.  The Court would also reconsider its ruling if it was presented with evidence that the named individuals had consented to release."  949 F. Supp. 2d at 213 n.14.  At the very least, *In Re Nichter* supports the release of information pertaining to the eight people who have submitted declarations supporting Professor Lepore's petition.

Finally, the government references the Second Circuit's observation that "there are obvious differences between releasing one witness's testimony, the full transcript, or merely the minutes of the proceeding."  *Craig*, 131 F.3d at 106.  Quite right.  But the question here is not whether there is a difference, but rather what that difference suggests the Court should do in this case.[4]  The totality of the nine *Craig* factors supports disclosure.

The Second Circuit in *Craig* made clear that circumstances like those before the Court can warrant disclosure of grand jury records: "Lest there be any doubt in the matter . . . we today hold that there is nothing . . . that prohibits historical interest, on its own, from justifying release of grand jury material in an appropriate case."  *Id*. at 105.  And the Seventh Circuit has agreed, holding that "the existence of Rule 6 does not, by itself, eliminate the court's power to address situations that the Rule does not describe."  *Carlson*, 837 F.3d at 763.  This Court should

---

[4] The question of overbreadth in this case is inherently factual.  Professor Lepore contends that her request is framed appropriately given the circumstances.  If the Court wishes to evaluate whether the scope of her request is proper, *in camera* or *ex parte* proceedings should be ordered.

likewise vindicate the public interest in these records of immense historical significance.

Nothing the government argues compels a contrary result.

## CONCLUSION

For the reasons stated and on the authorities cited in this memorandum of law, Professor

Lepore respectfully requests that this Court deny the government's motion to dismiss and grant

the petition for an order directing release.

Dated:  July 12, 2019

Respectfully submitted,

| | |
|---|---|
| /s/ *Charles Crain* | /s/ *Jonathan M. Albano* |
| Charles Crain, *pro hac vice* | Jonathan M. Albano |
| Jacob Schriner-Briggs, law student intern | Noah J. Kaufman |
| Media Freedom & Information Access Clinic | Morgan, Lewis & Bockius LLP |
| Abrams Institute | One Federal Street |
| Yale Law School | Boston, MA 02110 |
| P.O. Box 208215 | Phone: (617) 341-7700 |
| New Haven, CT 06520 | jonathan.albano@morganlewis.com |
| Phone: (203) 436-5824 | noah.kaufman@morganlewis.com |
| charles.crain@ylsclinics.org | |

## CERTIFICATE OF SERVICE

I, Jonathan M. Albano, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Jonathan M. Albano*
Jonathan M. Albano
Morgan, Lewis & Bockius LLP

Dated: July 12, 2019