UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JILL LEPORE, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 18-mc-91539-ADB |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER ON PETITION FOR ORDER DIRECTING RELEASE OF RECORDS AND MOTION TO DISMISS**

BURROUGHS, D.J.

Petitioner Jill Lepore initiated this case to obtain an order directing the United States to release all records of two grand juries convened in Boston in 1971. [ECF No. 1]. Currently before the Court is the Government's motion to dismiss the petition. [ECF No. 30]. For the reasons set forth below, Lepore's petition, [ECF No. 1], is GRANTED in part and DENIED in part, and the Government's motion to dismiss, [ECF No. 30], is GRANTED in part and DENIED in part.

I.   BACKGROUND

   A.   Procedural Background

Lepore filed her petition on December 17, 2018, approximately two months after the National Archives at Boston, where the records she seeks are stored, denied her Freedom of Information Act request for the materials. [ECF No. 3 at 11–12]. In support of her petition, Lepore submitted declarations from grand jury witnesses and subpoenaed parties, as well as a purported target of the grand jury investigations. [ECF Nos. 5–12]. On June 14, 2019, the

Government filed a motion to dismiss the petition. [ECF No. 30]. Lepore filed her opposition on July 12, 2019, [ECF No. 34], and the Government filed a reply brief on August 5, 2019, [ECF No. 37].

### B. History of 1971 Grand Jury Proceedings

In June 1971, several newspapers, including the *New York Times* and *Washington Post*, released excerpts of a classified report commissioned by then Secretary of Defense Robert McNamara that analyzed U.S. involvement in Vietnam. [ECF No. 3 at 5, 7]. This led to high profile efforts to enjoin the newspapers from releasing the materials and later to grand jury investigations into how Daniel Ellsberg was able to obtain and disseminate the report. [Id.]. The copying and release of the report, dubbed the "Pentagon Papers," continues to provide fodder for scholarship and popular entertainment. See [ECF No. 3 at 5, 7].

Ellsberg was indicted by a federal grand jury in Los Angeles, California, in December 1971, but the charges against him were eventually dropped in May 1973. [ECF No. 3 at 8]. Two federal grand juries were convened in Boston in 1971; the second grand jury was empaneled after the first was reportedly dismissed due to leaks to the press. [Id.]. Lepore notes that little is known about the first grand jury. [Id.]. The second grand jury issued subpoenas to at least thirteen people, including many who provided declarations in support of the present petition. [Id. at 8–9]. It was also the topic of newspaper articles, as well as a First Circuit opinion regarding witness Samuel Popkin's refusal to testify about specific topics. See United States v. Doe, 460 F.2d 328 (1st Cir. 1972).

## II. LEGAL STANDARD

Lepore's request for records of the two 1971 Boston grand juries that investigated the Pentagon Papers leak is properly before the Court as "those who seek grand jury [records] have

little choice other than to file a request with the court that supervised the grand jury, as it is the only court with control over the [records]." Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 225 (1979). As the Supreme Court has observed,

> The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its findings. The proceeding before a grand jury constitutes 'a judicial inquiry' . . . of the most ancient lineage.

Cobbledick v. United States, 309 U.S. 323, 327 (1940) (internal citation omitted). Although rooted in a "tradition of independence," United States v. Williams, 504 U.S. 36, 49 (1992), grand juries are "subject to the supervision of a judge," Branzburg v. Hayes, 408 U.S. 665, 688 (1972), and are viewed as "an arm of the court," Levine v. United States, 362 U.S. 610, 617 (1960). See Carlson v. United States, 837 F.3d 753, 758 (7th Cir. 2016).

The Supreme Court has frequently emphasized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas, 441 U.S. at 218. Several interests are protected by this secrecy, including ensuring that witnesses feel confident coming forward to speak, protecting witnesses from retribution or inducements for their testimony, guarding decisions from those who may be indicted to protect against flight or attempts to influence jurors, and protecting the identity of those who are exonerated by the grand jury. Id. at 218–19.

Rule 6(e) of the Federal Rules of Criminal Procedure outlines the secrecy obligations of those involved in grand jury proceedings, as well as exceptions to these secrecy obligations. Fed. R. Crim. P. 6(e). Rule 6(e)(3) and 6(e)(6) set parameters for the sealing and disclosure of materials relating to grand jury matters. Fed. R. of Crim. P. 6(e)(3), 6(e)(6). In particular, Rule 6(e)(3)(E) outlines five instances in which a court may authorize the disclosure of grand jury

materials, all of which are related to ongoing civil or criminal proceedings or government need. Fed. R. of Crim. P. 6(e)(3)(E).[1]

Although the secrecy of grand jury proceedings is protected by both case law and the Federal Rules of Criminal Procedure, "the federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle, and Rule 6(e) is but declaratory of it." Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399 (1959).

### III.   DISCUSSION

In its motion to dismiss, the Government argues that Lepore's petition does not fit into any of the five enumerated circumstances under which Rule 6(e)(3) permits disclosure. [ECF No. 31 at 1, 7].  The Government also argues that the Court lacks the authority to disclose the records for any reason not provided for in Rule 6(e)(3) and that even if the Court had such authority, Lepore's request for all records of the two grand juries is overbroad.  [Id. at 1]. Lepore counters that the Court has the inherent authority to authorize disclosure of grand jury records

---

[1] The five instances for disclosure outlined in Rule 6(e)(3)(E) are:
  (i) preliminarily to or in connection with a judicial proceeding;
  (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;
  (iii) at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;
  (iv) at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or
  (v) at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.
Fed. R. Crim. P. 6(e)(3)(E).

where, as here, the reason for the disclosure does not fit within the bounds of Rule 6(e)(3). [ECF No. 34 at 1].

### A.     The Court's Inherent Authority to Disclose

A circuit split exists as to whether courts have inherent authority to disclose grand jury records outside of the reasons enumerated in Rule 6(e)(3). The Second, Seventh, and Eleventh Circuits have held that courts do have this authority.[2] See Carlson v. United States, 837 F.3d 753 (7th Cir. 2016); In re Petition of Craig, 131 F.3d 99 (2d Cir. 1997); see also United States v. Aisenberg, 358 F.3d 1327 (11th Cir. 2004).[3] The Eighth Circuit, however, has declined to recognize this authority. United States v. McDougal, 559 F.3d 837, 840 (2009). Likewise, a recent D.C. Circuit opinion held that district courts do not have authority to disclose grand jury records beyond the bounds of Rule 6(e)(3), McKeever v. Barr, 920 F.3d 842, 845 (D.C. Cir. 2019), in apparent contravention of a 1974 D.C. Circuit case which affirmed a district judge's decision to disclose grand jury materials for a reason not enumerated in Rule 6(e)(3), Haldeman

---

[2] The Tenth Circuit has also suggested, without deciding, that courts have this authority. See In re Special Grand Jury 89-2, 450 F.3d 1159, 1178 (10th Cir. 2006) (noting that "[t]here is substantial support for Appellant's position" that the district court had inherent authority to disclose grand jury records outside of Rule 6(e)).

[3] In February 2019, the Eleventh Circuit issued another opinion espousing the courts' inherent authority to disclose grand jury materials. Pitch v. United States, 915 F.3d 704 (11th Cir. 2019). That opinion was vacated for rehearing en banc. See Pitch v. United States, 925 F.3d 1224 (11th Cir. 2019). Oral argument took place in October 2019, and an opinion is pending. Until that opinion issues and indicates otherwise, the Eleventh Circuit's opinion in United States v. Aisenberg remains governing case law for the Eleventh Circuit on this issue. See United States v. Aisenberg, 358 F.3d 1327; see also In re Petition to Inspect & Copy Grand Jury Materials, 735 F.2d 1261, 1268 (11th Cir. 1984) ("[I]t has been authoritatively said that [Rule 6(e)] is not the true source of the district court's power with respect to grand jury records but rather is a codification of standards pertaining to the scope of the power entrusted to the discretion of the district court . . . ." (citing Pittsburgh Plate Glass, 360 U.S. at 399)).

v. Sirica, 501 F.2d 714, 715 (1974).[4]  On January 21, 2020, the Supreme Court denied certiorari in McKeever.  McKeever v. Barr, No. 19-307, 2020 WL 283746 (Jan. 21, 2020).  In a statement regarding the denial, Justice Breyer wrote that the D.C. Circuit's opinion "is in conflict with the decisions of several other circuits" and "appears to conflict with the considered views of the Rules Committee."  Id. at *1.[5]

Though the First Circuit has not considered this issue, a 2005 opinion sheds some light on the First Circuit's view of the matter.  See In re Grand Jury Proceedings, 417 F.3d 18 (1st Cir. 2005).  In that case, the First Circuit was asked to extend the secrecy requirements of Rule 6(e)(2) to a grand jury witness who was not otherwise subject to a secrecy obligation under that Rule.  Id. at 25.  Rule 6(e)(2)(A) provides that "[n]o obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)."  Fed. R. Crim. P. 6(e)(2)(A).  Rule 6(e)(2)(B) imposes an obligation of secrecy on grand jurors, government attorneys, interpreters, court reporters, and others—but not on witnesses.  See Fed. R. Crim. P. 6(e)(2)(B).

Despite the express language of Rule 6(e)(2)(A), the First Circuit held that "the rule's phrasing can, and should, accommodate rare exceptions premised on inherent judicial power." In re Grand Jury Proceedings, 417 F.3d at 26.  The panel went on to note that "[s]ometimes these powers are reflected in or reconfirmed by rules . . . but orders of this kind predated such rules which ordinarily reflect or refine the underlying authority without displacing it."  Id.  In support of this contention, the panel cited United States v. Aisenberg and its holding that "[a]lthough

---

[4] See McKeever, 920 F.3d at 853 (Srinivasan, J., dissenting) ("In my respectful view, however, our court's en banc decision in Haldeman v. Sirica, 501 F.2d 714, 163 U.S. App. D.C. 154 (1974), allows for district court disclosures beyond Rule 6(e)'s exceptions.").

[5] Justice Breyer further observed that whether district courts retain inherent authority to release grand jury materials outside of Rule 6 is a question "the Rules Committee both can and should revisit."  McKeever v. Barr, 2020 WL 283746, at *1.

Rule 6(e)(3) enumerates the exceptions to the traditional rule of grand jury secrecy . . . the district courts have inherent power beyond the literal wording of Rule 6(e)(3) to disclose grand jury material . . . ." Id. at 26 n.9 (quoting Aisenberg, 358 F.3d at 1347).

   1.  History of Rule 6(e)

  The Federal Rules of Criminal Procedure were first adopted in 1944, while "the modern version of Rule 6(e) was enacted directly by Congress in 1977." Carlson, 837 F.3d at 765. As the 1944 Committee Notes state, "[t]his rule continues the traditional practice of secrecy on the part of members of the grand jury, except when the court permits a disclosure . . . ." Fed. R. Crim. P. 6 advisory committee's note to 1944 rules (citations omitted). The parties disagree over the significance of an amendment proposed by Attorney General Eric Holder in 2011 that would have specifically allowed district courts to permit disclosure of grand jury materials of historical significance. [ECF No. 34 at 9; ECF No. 37 at 6]. As reflected in the minutes from a 2012 Advisory Committee meeting in which this proposal was considered, the Committee declined to adopt such a rule due to a "consensus that, in the rare cases where disclosure of historically significant materials had been sought, district judges had reasonably resolved applications by reference to their inherent authority . . . ." Advisory Comm. on Crim. Rules, Mins. of Apr. 22–23, 2012 Meeting at 7 (Apr. 2012).

  Beyond the history of Rule 6(e), the Government argues that, according to Supreme Court precedent, "federal courts do not have inherent powers to develop rules that circumvent or conflict with the rules of criminal procedure." [ECF No. 31 at 3 (citing Carlisle v. United States, 517 U.S. 416, 426 (1996))]. Where the rules are silent, however, Federal Rule of Criminal Procedure 57(b) provides that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Fed. R. Crim. P. 57(b). Consistent

with this Rule, the Supreme Court has held that, where the rules do not manifest a "clear[] expression of purpose" to abrogate the courts' inherent authority, it will not read into the rules an intent to do so.  Link v. Wabash R.R. Co., 370 U.S. 626, 631–32 (1962); see Carlson, 837 F.3d at 763.

In reviewing the language of Rule 6(e)(3) and its subsections, it is clear that, unlike Rule 6(e)(2)(A), subsections (e)(3) and (e)(3)(E) contain no limiting language such as "unless these rules provide otherwise," "except in accordance with these rules," or "only."  See Fed. R. Crim. P. 6(e); Carlson 837 F.3d at 764 ("The few hints that we find in the text of Rule 6(e) all indicate that the list in subpart (3)(E) is *not* exclusive.").  The Court agrees with the Seventh Circuit in Carlson in finding that "[t]he presence of limiting language elsewhere in Rule 6(e) . . . indicates that its absence in (3)(E) is intentional."  Carlson 837 F.3d at 764.  As a result, and consistent with the First Circuit's opinion in In re Grand Jury Proceedings and the Second, Seventh, and Eleventh Circuits, the Court finds that it has the inherent authority to disclose grand jury records. See In re Grand Jury Proceedings, 417 F.3d at 26 n.9; Carlson, 837 F.3d at 763; Aisenberg, 358 F.3d at 1347; Craig, 131 F.3d at 102; see also Pittsburgh Plate Glass, 360 U.S. at 399 ("Our cases announce the same principle, and Rule 6(e) is but declaratory of it.").

        2.     *Craig* Factors

The Court must now consider whether it should release the requested materials under its inherent authority.  The Supreme Court has identified a "particularized need" standard as appropriate to disclosures made under Rule 6(e), where grand jury materials are being sought for use in another proceeding.  Douglas, 441 U.S. at 217–18; see United States v. Gurry, 2019 U.S. Dist. LEXIS 8212, *6 (D. Mass. Jan. 17, 2019).  In its 1997 opinion regarding disclosures of grand jury materials outside of the reasons provided in Rule 6(e)(3)(E), the Second Circuit

rearticulated a "special circumstances" standard applicable where grand jury materials are not being sought in connection with other proceedings. Craig, 131 F.3d at 104 n.5 (observing that the Douglas test is only appropriate in the context of Rule 6(e) disclosures); see In re Biaggi, 478 F.2d 489 (2d Cir. 1973) (first articulating the special circumstances test). The Court joins those circuits that have adopted the Craig test. See Carlson, 837 F.3d at 765 (affirming a district court decision that applied the Craig factors); Carlson v. United States, 109 F. Supp. 3d 1025, 1034 (N.D. Ill. 2015) (noting that the Craig factors "incorporate[] flexibility and a nuanced consideration of a variety of factual matters to guide the Court's exercise of discretion"); see also Pitch, 915 F.3d at 710–11 (adopting the Craig factors), reh'g en banc ordered and opinion vacated, 925 F.3d at 1224.

> The Craig test includes the following non-exclusive factors:
>
> (i) the identity of the party seeking disclosure;
> (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure;
> (iii) why disclosure is being sought in the particular case;
> (iv) what specific information is being sought for disclosure;
> (v) how long ago the grand jury proceedings took place;
> (vi) the current status of the principals of the grand jury proceedings and that of their families;
> (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public;
> (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and
> (ix) the additional need for maintaining secrecy in the particular case in question.

Craig, 131 F.3d at 106.

Beyond generally opposing the disclosure of grand jury materials, the Government focuses its opposition to disclosure under the Craig test to the fourth factor, which pertains to

9

what information is being sought. [ECF No. 31 at 13–15].[6] The Government maintains that Lepore's request for "all documents chronicling, concerning, and relating to the 1971 Boston grand juries" is overbroad and should be denied on that basis. [ECF No. 31 at 13 (quoting ECF No. 4 ¶ 48)]. In addition, the Government suggests that Lepore should rely on materials that have already been disclosed or could be disclosed under Rule 6 without the Court's permission, including a 1972 First Circuit opinion related to one grand jury witness's testimony and the recollections of living witnesses. [ECF No. 31 at 15]; see Doe, 460 F.2d 328. Lepore counters that "[t]he fragmentary public record, or the opportunity to ask elderly people to recall events from half a lifetime ago, are not substitutes for providing a historian with access to primary sources relevant to her work and to American history more generally." [ECF No. 34 at 18].

Lepore's request is indeed broad as she seeks "witness testimony and all related material from the Boston grand juries, including FBI reports." See [ECF No. 3 at 20]. Most other petitions seeking disclosure of grand jury materials for historical purposes involved requests for transcripts alone, rather than the entire record of grand jury proceedings. See, e.g., In re Nat'l Sec. Archive, 104 F. Supp. 3d 625, 628–29 (S.D.N.Y. 2015) (granting petition to release transcripts of two witnesses); In re Kutler, 800 F. Supp. 2d 42, 43 (D.D.C. 2011) (granting petition to release transcript of one witness); In re Grand Jury Proceedings (Miller), 493 F.3d

---

[6] The Court finds that the majority of the remaining factors support disclosure, including the fact that at this stage no witnesses or principals have opposed disclosure, the grand juries in question sat nearly fifty years ago, no one was indicted as a result of the investigations, and some of the matters before the grand jury previously have been made public. See [ECF No. 1]; Craig, 131 F.3d at 106. The Government has not articulated any ongoing need for secrecy of these materials in particular, but instead opposes disclosure under the general rule that grand jury proceedings should remain secret. See generally [ECF No. 31]. See In re Am. Historical Ass'n, 49 F. Supp. 2d 274, 291 (S.D.N.Y. 1999) (granting a petition to release fifty-year old grand jury transcripts and noting that the Government did "not contend there is any particular reason to keep secret the fifty-year old grand jury materials at issue").

152, 153 (D.D.C. 2007) (granting disclosure of redacted opinion and *ex parte* motions involving grand jury matter); In re Am. Historical Ass'n, 49 F. Supp. 2d 274, 291 (S.D.N.Y. 1999) (granting disclosure of specific pages from grand jury transcripts).  Although Lepore has obtained declarations from witnesses as well as one putative target of the investigation in support of her petition, there are other witnesses who have not indicated whether they support or oppose release of the records.  See [ECF Nos. 13, 14].  In addition, there may be other targets of the investigation who have not been publicly identified.  In light of this, Lepore's petition, [ECF No. 1], is GRANTED in part and DENIED in part as the Court will allow a limited disclosure of the grand jury materials.  The Government's motion to dismiss, [ECF No. 30], is likewise GRANTED in part and DENIED in part.

### B. Scope of Disclosure

Consistent with the purposes of maintaining the secrecy of grand jury proceedings as outlined in Douglas, the Court seeks to respect the wishes and interests of those who participated in the 1971 grand jury proceedings with the expectation that their participation would remain confidential.  See Douglas, 441 U.S. at 218.[7]  The Court will not, therefore, grant Lepore unfettered access to the materials she seeks.  Instead, consistent with Rule 6(e), any disclosure will be subject to the Court's discretion regarding the "time," "manner," and "any other conditions" the Court directs.  See Fed. R. Crim. P. 6(e)(3)(E).  The Government has acknowledged prior disclosure of some aspects of the grand jury proceedings, including through

---

[7] The Court notes that the "forward-looking interest" in ensuring that future participants in grand jury proceedings "will not be inhibited due to the possibility of subsequent disclosure," as articulated in Douglas, is not evident here, where nearly fifty years have elapsed since the grand jury proceedings in question and many contemporaneous leaks and disclosures have already occurred.  See In re Am. Historical Ass'n, 49 F. Supp. 2d at 292 (citing Douglas, 441 U.S. at 222).

11

a First Circuit opinion from 1972 and public statements by witnesses who testified before the grand juries. [ECF No. 31 at 12, 15 (citing Doe, 460 F.2d at 329–32)]. Lepore has also identified contemporaneous press coverage as well as other materials that previously disclosed information about the 1971 grand jury proceedings. [ECF No. 4 ¶¶ 26–37, 51–54].

The Court intends to release transcripts and exhibits for those witnesses who submitted declarations in favor of release,[8] but will allow the Government to propose redactions to those transcripts and exhibits if the Government can demonstrate that an individual discussed during the proceedings objects to disclosure of their name and/or information provided about them or if there is particular content that warrants non-disclosure.[9, 10] Transcripts and exhibits for those witnesses who are deceased will be released unless the Government can demonstrate a compelling need to maintain secrecy on behalf of their surviving families or based on content.[11] See In re Nat'l Sec. Archive, 104 F. Supp. 3d at 628–29 (finding that neither the posthumous

---

[8] The willingness of a witness to permit the disclosure of his or her grand jury testimony is not alone sufficient to permit the disclosure.

[9] The following witnesses and individuals who were subpoenaed submitted declarations in favor of release: Mike Gravel, Samuel Popkin, Richard Falk, Noam Chomsky, Leonard Rodberg, Howard Webber, and Stewart Perry. [ECF Nos. 5, 7–12]. In addition, Daniel Ellsberg, one of the targets of the grand jury investigations, has also submitted a declaration in support of releasing the materials. [ECF No. 6].

[10] The Government may, alternatively, submit notice to the Court of its intent to allow the National Archives at Boston to follow its own procedures for identifying and resolving privacy concerns in archived materials. See In re Kutler, 800 F. Supp. 2d 42, 50 (D.D.C. 2011) (discussing National Archives and Records Administration review procedures).

[11] Deceased witnesses include David Halberstam, Idella Marx, and K. Dun Gifford. [ECF No. 4 ¶ 46].

interest of a grand jury witness nor his surviving family could prevent disclosure of grand jury transcripts).

Given its blanket opposition to disclosure of any records of the 1971 grand jury proceedings, the Government did not provide objections to specific documents within those records. [ECF No. 31 at 13]. In light of the Court's decision, if the Government now seeks to object to the disclosure of specific documents, aside from the transcripts and exhibits identified supra, the Government should submit a sealed, *ex parte* description of each document it objects to releasing, the reasons for its objection, including the objections of any individuals mentioned in the document, and proposed redactions within sixty days. This review should not be unduly burdensome on the Government given Lepore's declaration and supporting communication from the National Archives at Boston that the record is limited to "several boxes." [ECF No. 4 ¶ 48; ECF No. 4-2 at 6 (email from National Archives at Boston archivist estimating that the case is limited to 2.5 boxes, only some of which contain grand jury materials)].

### C. Disclosure Under Rule 6(e)(6)

Even if the Court did not have inherent authority to release the records subject to the conditions discussed supra, the Court notes that Rule 6(e)(6) provides the Court with authority to keep "[r]ecords, orders, and subpoenas relating to grand jury proceedings" under seal "to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(6). The First Circuit has defined a grand jury "matter" as "whatever happens within the grand jury—questions [a witness] has been asked or

13

may be asked, answers [a witness] has given or may give, documents [a witness] may provide or be shown, and the like." In re Grand Jury Proceedings, 417 F.3d at 27.

Other district courts have relied on Rule 6(e)(6) to unseal materials that have been partially disclosed, such that secrecy is no longer a concern. See In re Grand Jury Subpoena (Miller), 438 F.3d 1138, 1140 (D.C. Cir. 2006) ("[T]here must come a time . . . when information is sufficiently widely known that it has lost its character as Rule 6(e) material. The purpose in Rule 6(e) is to preserve secrecy. Information widely known is not secret." (quoting In re North, 16 F.3d 1234, 1245 (D.C. Cir. 1994))); In re Fed. Grand Jury Proceedings 03-01, 337 F. Supp. 2d 1218, 1220–21 (D. Or. 2004) ("The Government's assertion of grand jury secrecy under Rule 6(e)(6) is moot on the open record in this matter.").

As the Government acknowledges, certain aspects of the 1971 grand jury matters are already public. [ECF No. 31 at 12, 15 (citing Doe, 460 F.2d at 329–32, and ECF Nos. 5–12 (declarations of witnesses and others involved in the grand jury investigation)].[12] To the extent that these matters are now nearly fifty years old, have been the subject of contemporaneous newspaper articles, and have been partially disclosed in both public court filings and statements made by grand jury witnesses, the Court finds that it is no longer necessary to keep the materials in question under seal, subject to the limitations in scope described supra. See Fed. R. Crim. P. 6(e)(6).

## IV.     CONCLUSION

The Court only reluctantly allows the release of these grand jury materials. Grand jury proceedings have traditionally been kept secret and with good reason. The Court is loath to

---

[12] Lepore's declaration in support of her petition also states that she "found a transcript of Popkin's grand jury testimony in the archives at MIT." [ECF No. 4 ¶ 45].

erode this presumption of secrecy and is wary of the risk of unintended consequences. The Court is also concerned that any "historical" exception could be expanded beyond the very limited exception the Court recognizes today.[13] All of that being said, the authority of the Court to allow the disclosure sought in this case seems clear and given the passage of time, the historical significance of the materials at issue, and the fact that much of the matter is already in the public domain, the Court must conclude that the limited disclosure allowed herein does not run afoul of any of the purposes of grand jury secrecy.

Accordingly, as set forth herein, Lepore's petition, [ECF No. 1], is <u>GRANTED</u> in part and <u>DENIED</u> in part and the Government's motion to dismiss, [ECF No. 30], is <u>GRANTED</u> in part and <u>DENIED</u> in part. The Government is ordered to propose redactions, if any, to transcripts and exhibits for those witnesses who submitted declarations in favor of release. The Government may also propose redacting or withholding transcripts and exhibits for those witnesses who are deceased if the Government can demonstrate a compelling need to maintain secrecy on behalf of their surviving families. In addition, if the Government wants to object to the disclosure of any other documents, aside from those identified <u>supra</u>, the Government will submit a sealed, *ex parte* description of each document it objects to releasing and the reasons for its objections, including the objections of any individuals mentioned in the records. The Government will provide these proposed redactions and objections, if any, to the Court within sixty days. Given the importance of this issue, the Court will consider, upon the request of the Government, staying the execution of its final order pending appeal.

---

[13] The Court notes that a bright line rule prohibiting the disclosure of materials less than fifty years old or creating a strong presumption against such a disclosure could mitigate this risk. See <u>McKeever v. Barr</u>, 2020 WL 283746, at *1 (statement of Justice Breyer in which he observed that "the Rules Committee both can and should revisit" the topic of disclosing grand jury materials outside of Rule 6(e)).

**SO ORDERED.**

February 4, 2020 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE